UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **SHELBY LACEY** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 23-6757** |
| **APEX ROOFING AND RESTORATION, L.L.C.** | * | **SECTION L** |

**ORDER & REASONS**

Before the Court is Defendant Apex Roofing and Restoration, L.L.C.'s motion to dismiss and compel arbitration. R. Doc. 3. Plaintiff Shelby Lacey opposes the motion, R. Doc. 13, and Defendant has filed a reply, R. Doc. 16. Having considered the briefing and the applicable law, the Court rules as follows.

**I.    BACKGROUND**

This case arises out of a wage dispute between Plaintiff Shelby Lacey and Defendant Apex Roofing and Restoration, L.L.C. ("Apex") R. Doc. 1-2 at 1. Plaintiff originally filed her complaint in the Civil District Court for the Parish of Orleans, but Apex removed the case to this Court pursuant to both federal question and diversity jurisdiction. R. Doc. 1.

Lacey began working for Apex on January 28, 2022. R. Doc. 1-2 at 4. Apex is an Alabama roofing company that frequently solicits Louisiana clients. *Id.* Lacey was hired as a low-level salesperson or "doorknocker" and was given a specific territory of potential Louisiana clients for the purpose of selling Apex's roofing services. *Id.* At that time, Apex was seeking clients with residences affected by Hurricane Ida. *Id.*

The year before, Apex entered into an agreement with a Texas law firm, McClenny, Mosley & Associates, APLC (MMA). *Id.* at 3. Their agreement created a scheme in which Apex—through its doorknockers—would offer new clients roof services in exchange for the clients assigning to

Apex their home insurance policy benefits. *Id.* Apex would also offer MMA's legal services to help execute the insurance transactions. *Id.* Lacey alleges that the scheme was illegal for several reasons, including Louisiana's prohibition of in-person solicitation of legal services. *Id.*

In her Complaint, Lacey contends that Apex also wronged her personally by improperly withholding her earned wages. *Id.* Lacey alleges that Apex misclassified her as an independent contractor when she was really an employee, and thus improperly failed to pay her overtime. *Id.* at 8. Apex also allegedly withheld compensation and bonuses for events arising outside Lacey's control. *Id.* at 6. Lacey's employment was terminated by Apex without explanation on January 10, 2023, and Lacey seeks unpaid compensation. *Id.* at 5.

Specifically, Lacey states five causes of action: (1) unpaid employee wages and expenses; (2) unpaid overtime under the Fair Labor Standards Act; (3) breach of employment contract; (4) open account; and (5) unfair trade practices. *Id.* at 7-11. She seeks compensatory damages including, unpaid compensation, unreimbursed expenses, future tax liability, additional money awards, attorney's fees, and other statutory damages under Louisiana law. *Id.* at 11. In response, Apex filed the instant motion to dismiss and compel arbitration. R. Doc. 3.

II.     **PRESENT MOTION**

In its motion, Apex asserts that Lacey worked for Apex as a contractor sales consultant pursuant to a Consulting Agreement between the parties. R. Doc. 3-1 at 1-2. This agreement, Apex argues contains a binding arbitration clause, which states that "Consultant and Company agree to resolve any and all claims. . .arising out of or relating to this Agreement. . .exclusively by final and binding arbitration in accordance with the Construction Rules of the American Arbitration Association. . . ." *Id.* at 2; R. Doc. 3-2 at 9.  It avers that all of Lacey's claims are covered by the arbitration clause and thus, the parties must submit to arbitration. R. Doc. 3-1.

In opposition, Lacey argues that the Consulting Agreement between the parties is an absolute nullity because it violates a rule of public order. R. Doc. 13. She argues that she did not know that her work for Apex was part of an overall scheme including MMA and others "to engage in a multi-facetted [sic] campaign to enrich themselves by obtaining insurance proceeds from the homeowners insurance carriers and contingency fees associated therewith." *Id.* at 2. Under these circumstances, she argues that the Apex's motion should be denied because the Court should first determine the validity of the Consulting Agreement. *Id.* at 3-4. In the alternative, Lacey argues that the Consulting Agreement is unenforceable because it is fraudulent under La. Civ. Code art. 1948. *Id.* at 4-7. Accordingly, Lacey prays that this Court deny Apex's motion. *Id.* at 7-8.

In Apex's reply, it avers that Lacey does not challenge the validity of the arbitration clause but rather, the Consulting Agreement, as a whole. R. Doc. 16. Pursuant to federal law, it argues that such questions are for the arbitrator to resolve and not the Court. *Id.* at 3-5. It also avers that the parties agreed to delegate to the arbitrator on issues relating the validity of the contract. *Id.*

**III.     LAW**

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556. A claim is plausible on its face when the plaintiff has pled facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 570. Although a court must liberally construe the complaint in light most favorable to the plaintiff, accept the plaintiff's allegations as

true, and draw all reasonable inferences in favor of the plaintiff, *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996), courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions*." Arias-Benn v. State Farm Fire & Cas. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

### IV.   ANALYSIS

Section 2 of the Federal Arbitration Act provides, in relevant part, "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction. . .shall be valid, irrevocable, and enforceable. . . ."  9 U.S.C. § 2. There is a strong presumption in favor of arbitration for arbitrable disputes. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Bhatia v. Johnson*, 818 F.2d 418, 421 (5th Cir. 1987) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614 (1985)). When considering a motion to compel arbitration under the FAA, the court's inquiry consists of three steps. *See Mitsubishi Motors Corp.*, 473 U.S. at 626; *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002). First, the court must determine whether a valid agreement to arbitrate exists between the parties. *Gaskamp*, 280 F.3d at 1073. Next, it will examine "whether the dispute in question falls within the scope of that arbitration agreement." *Id.* If the first two steps are answered affirmatively, the court must ultimately consider "whether 'any federal statute or policy renders the claims nonarbitrable.'" *Jones v. Halliburton Co.*, 583 F.3d 228, 234 (5th Cir. 2009) (internal citation omitted).

The Supreme Court holds that federal courts do not consider challenges to the validity of the entire contract when determining whether an agreement to arbitrate exists. *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 449 (2006). Further, the Court has found that arbitration agreements are severable from the underlying contract under Section 2 of the FAA. *See id.*; *see*

also *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). In other words, "a 'party's challenge…to the contract as a whole…does not prevent a court from enforcing a specific agreement to arbitrate.'" *Edwards v. Doordash*, 888 F.3d 738, 744 (5th Cir. 2018) (quoting *Rent-A-Center, W., Inc.*, 561 U.S. at 70)).

In previous opinions, the Fifth Circuit clarified how the Court's rule distinguishes between disputes on the validity of arbitration agreements from disputes on the validity of an entire contract. *Id.* It states that "once the court determines there is a valid arbitration agreement, any remaining arguments that target the validity of the contract as a whole are questions for the arbitrator." *Id.* Additional guidance provides that courts should first examine whether an agreement to arbitrate was formed and if the agreement contained a delegation clause. If true and "absent a challenge to the delegation clause, we still consider that clause to be valid and compel arbitration." *Id.*

To determine whether there is an agreement to arbitrate, the Court looks to underlying state law. The Court finds that Louisiana law applicable in the instant matter as both parties have cited to Louisiana law in their briefing, the incidents giving rise to the suit took place in Louisiana, and neither party has called into question the applicability of Louisiana law. R. Doc. 3-1 at 4; R. Doc. 13 at 3-4. Under Louisiana law, a contract is "an agreement by two or more people whereby obligations are created, modified, or extinguished." La. Civ. Code art. 1906. Louisiana law further provides that "a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him." *Coleman v. Jim Walter Homes, Inc.*, No. 08–1221 (La. 3/17/09), 6 So. 3d 179, 183; *Sherman v. RK Restaurants Holdings, Inc.*, No. 13-6054, 2014 WL 4540023 *1, *5 (E.D. La. Sept. 11, 2014). Here, it is undisputed that Lacey signed the Consulting Agreement, which contained the agreement to arbitrate therein. R. Doc. 3-2 at 10. Thus, the Court

finds that there was an agreement to arbitrated consented to by both parties.

The Court now turns to whether there is an enforceable delegation clause. Apex indicates a delegation clause exists in the agreement through incorporation of the American Arbitration Association ("AAA") Construction Rules. R. Doc. 16 at 5. Lacey does not dispute this fact.

Rule 9 of the AAA Construction Rules provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim" American Arbitration Association, Construction Industry Arbitration Rules and Mediation Procedures, R-9 Jurisdiction. Further, it is well settled in this Circuit that agreements that expressly incorporate the AAA rules demonstrate that the parties agreed to arbitrate. *See e.g., Crawford Professional Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 262-63 (5th Cir. 2014) (holding that "express incorporation of the same AAA Rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability") (internal quotation omitted); *Edwards*, 888 F.3d at 746 (affirming the district court's holding to compel arbitration because the agreement at issue contained a delegation clause through incorporating AAA rules).

Here, the Consulting Agreement contained an arbitration clause, which, through incorporation of the AAA rules, contained an agreement to delegate issues relating to the existence and validity of the Consulting Agreement to the arbitrator. Because Apex sought to compel arbitration on the basis of that delegation clause, the Court must treat it as valid absent any specific challenge to the delegation clause by Lacey. Lacey's claims that the contract is an absolute nullity, or in the alternative, "vitiated due to fraud" target the Consulting Agreement as a whole. R. Doc. 13 at 4. However, she fails to challenge the delegation clause specifically. Accordingly, the Court must find the delegation clause as valid. Lacey's arguments addressing the validity of the

Consulting Agreement should be addressed by the arbitrator.

Because the parties must submit to arbitration regarding Lacey's claims, the Court finds that dismissal of the present matter is appropriate. The Fifth Circuit and other sections of this Court have previously held that when all issues raised in the suit require arbitration, a dismissal of the matter is favored. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports the dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."); *see also S.R.P. Dev. La., LLC v. Pontchartrain Park Cmty. Dev. Corp.*, No. 13-5180, 2013 WL 6145227 (E.D. La. Nov. 21, 2013) (holding that the matter must be dismissed because all issues must be submitted to arbitration); *B and S Equip. Co. v. Healtheon Inc.*, No. 10-1105, 2010 WL 2545590 (E.D. La. June 15, 2010) (granting a motion to dismiss and compel arbitration because the arbitration agreement between the parties was valid). Because all of Lacey's claims arise out of the Consulting Agreement, which are to be addressed by the arbitrator, the Court finds dismissal of the suit without prejudice as proper. Should arbitration be unsuccessful, Lacey reserves the right to file her lawsuit again in this Court.

V.   **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss and compel arbitration, R. Doc. 3, is hereby **GRANTED**. Plaintiff Shelby Lacey's claims against Defendant Apex Roofing and Restoration, L.L.C. are hereby **DISMISSED** without prejudice.

New Orleans, Louisiana this 25th day of January, 2024.

_____
United States District Judge